1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LARRY G. JOHNSON,

        Plaintiff,

    v.

CATHARINE M. VENZON, *et al.*,

        Defendants.

Case No. C12-895RSL

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO
DISMISS FOR LACK OF
PERSONAL JURISDICTION

     This matter comes before the Court on Defendants' "Motion to Dismiss for Lack of Personal Jurisdiction" (Dkt. # 16).  Defendants contend that this Court lacks personal jurisdiction over them and ask the Court to award them their attorney's fees pursuant to RCW 4.28.185(5).  The Court GRANTS the motion IN PART.  It DISMISSES the matter for lack of jurisdiction but DENIES Defendants' request for fees.

## I.  BACKGROUND

     This case concerns the alleged unlawful publication of Plaintiff Larry G. Johnson's book, "The Deposition Guide, A Practical Handbook for Witnesses," by the Defendants.  See Amended Complaint (Dkt. # 11) at ¶¶ 1.1–1.2.

     Defendant Catharine M. Venzon resides and practices law in Buffalo, New York. Id. at ¶ 2.2.  She is the "Chairman or Chief Executive Officer" of the Venzon Law Firm, a New York professional corporation and named Defendant in this case.  Id. at ¶ 2.3. Plaintiff, a Washington attorney and the sole owner of the copyright to his book, id. at ¶¶ 2.1, 4.2–4.4, contends that both copied his original work without permission and

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION - 1

created an inferior derivative work that they displayed on their web site and allowed

others to reproduce, id. at ¶ 1.2.  He seeks damages for "for copyright infringement,

trademark infringement, violation of the Lanham Act, unfair trade practices and

additional pendant torts arising out of Defendants' unlawful use, reproduction,

alteration, publication, display, and distribution" of his work.  Id. at ¶ 1.1.

## II. DISCUSSION

Defendants' motion is relatively straightforward.  They note that it is Plaintiff's

burden to establish this Court's jurisdiction, Am. Tel. & Tel. Co. v. Compagnie

Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996), and argue that Plaintiff cannot

demonstrate that either general or specific jurisdiction exists.  Dkt. # 16 at 6.  They also

ask for their fees under RCW 4.28.185(5).

Plaintiff disagrees.  Though he does not contest Defendants' position as to

general jurisdiction, he argues that this Court has specific personal jurisdiction over each

Defendant under the "effects test" set forth by the Supreme Court in Calder v. Jones,

465 U.S. 783, 789 (1984).  Opp. (Dkt. # 19) at 5–10.  He also argues that "Defendants

cannot meet their burden of making a 'compelling case' that this Court's exercise of

jurisdiction would be unreasonable."  See id. at 10–13.

**A. Jurisdiction**

"Where, as here, there is no applicable federal statute governing personal

jurisdiction, we look to the law of the state in which the district court sits."  Mavrix

Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (citing Fed. R.

Civ. P. 4(k)(1)(A)).  In this case, that is Washington's long-arm statute, RCW 4.28.185,

which "extends jurisdiction to the limit[s] of federal due process."  Chan v. Soc'y

Expeditions, Inc., 39 F.3d 1398, 1405 (9th Cir. 1994) (citations omitted).  Accordingly,

the Court considers only whether "the exercise of jurisdiction [would] comport with

federal due process."  Id. at 1405–06.  In undertaking this task, the Court recognizes that

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION - 2

"[w]here, as here, the district court receives only written submissions, the plaintiff need only make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss." Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). "[U]ncontroverted allegations in [Plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [Plaintiff's] favor." Id.

For specific jurisdiction to exist, "a defendant . . . must have 'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 315 (1945)). "This 'minimum contacts' test is satisfied" in the Ninth Circuit when:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

Id. "The plaintiff bears the burden of satisfying the first two prongs of the test." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." Id. But "[i]f the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id.

Notably, the first prong of the test actually encompasses two different avenues for jurisdiction: purposeful availment and purposeful direction. Id. ("We often use the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction, but availment and direction are, in fact, two distinct concepts. (internal citations omitted)). Plaintiff relies solely on the latter, purposeful direction, in this case. Accordingly, to meet the first prong of the minimum contacts

test, he must demonstrate that each defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Id. at 803 (quoting Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)) (discussing Calder, 465 U.S. 783).

Of these three requirements of the Calder effects test, only one causes the Court concern:  the "express aiming" requirement.[1]  As neatly explained in Lang v. Morris, 823 F. Supp. 2d 966, 969–74 (N.D. Cal. 2011), express aiming in the copyright context requires two showings.  First, at a minimum, Plaintiff must show that Defendants knew he was a Washington resident.  CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1077 (9th Cir.2011) (emphasis added) (quoting Dole Food, 303 F.3d at 1111, and Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000)).  Second, and more importantly, however, Plaintiff must also show that "[D]efendants' conduct was expressly aimed at the forum."  Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010) (citing Pebble Beach, 453 F.3d at 1156 ("We now conclude that 'something more' is what the Supreme Court described as 'express aiming' at the forum state.")).  Defendants dispute both prongs.

In regard to knowledge, Plaintiff relies on the fact that every copy of his book plainly states that he is a Washington resident and that Defendants' "derivative work" is quite clearly comprised of scanned pages of one of his books to contend that Defendants must have known he was a Washington resident.  See, e.g., Dkt. # 11 at ¶ 3.7.  He also alleges that after he sent Defendants a cease-and-desist letter in early 2012, Defendants sent him a letter addressed to his Washington address promising to remove his materials from their web site, but thereafter failed to do so.  Id. at ¶¶ 4.9–4.10; id. at 20

---

[1]  Unquestionably, Defendants committed an "intentional act" when they posted Plaintiff's materials on their web site, and, as will be discussed, Defendants could not have been unaware of Plaintiff's location and thus knew that their actions would cause harm in Washington.  See Mavrix, 647 F.3d at 1229, 1231–32.

(Defendants' letter to Plaintiff dated April 12, 2012, and mailed to Plaintiff's address in Newcastle, Washington). In retort, Defendants state simply that they had never "read Mr. Johnson's biography page until Plaintiff's Opposition to this motion was filed" and "did not know of Mr. Johnson's Washington state residence until after this law suit was filed." Dkt. # 22 at ¶ 2. As the documentary evidence flatly contradicts this latter statement, the Court finds that Plaintiff met his burden of demonstrating Defendants' knowledge of his Washington residency while they were allegedly still engaged in their infringing activities. See Schwarzenegger, 374 F.3d at 800 ("Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.").

The more difficult question is whether Plaintiff has demonstrated that "[D]efendants' conduct was expressly aimed at the forum." Brayton, 606 F.3d at 1129. This difficulty is decidedly legal. Portions of several Ninth Circuit cases support Plaintiff's position that "[t]he 'express aiming' requirement . . . is satisfied when 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" Dole Food, 303 F.3d at 1111 (citation omitted). At the same time, in each of those cases, the court did not give dispositive weight to the mere fact that the defendant knew the plaintiff was located in a particular forum; rather, each court focused on whether the defendant directed his actions at the forum. E.g., id. at 1112 ("Watts and Boenneken's fraudulent communications were not 'untargeted negligence,' but rather were 'performed for the very purpose of having their consequences felt in the forum state.'" (emphasis added)).

Moreover, Schwarzenegger plainly demonstrates that more than mere knowledge must be required. 374 F.3d at 807. In that case, "the former movie star and current California governor, brought an action in California alleging that an Ohio car dealership used impermissibly his 'Terminator' image in a newspaper advertisement in Akron, Ohio." Pebble Beach, 453 F.3d at 1156 (discussing Schwarzenegger). Reviewing the

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION - 5

district court's dismissal for lack of jurisdiction, the Ninth Circuit agreed, "concluding that even though the advertisement might lead to eventual harm in California this 'foreseeable effect' was not enough because the advertisement was expressly aimed at Ohio rather than California." Id.  Thus, despite the unquestionable fact that the defendants knew Schwarzenegger was a California resident when they allegedly misappropriated his likeness, that alone was simply not enough, Schwarzenegger, 374 F.3d at 807.  Rather, "something more" was required:  "individualized targeting of California, or the type of wrongful conduct, that could be construed as being directed at the forum state." Pebble Beach, 453 F.3d at 1156.

Later cases have similarly required "something more" than mere knowledge. "More directly pertinent here, '[they] have held that the "expressly aimed" prong of the purposeful direction test can be met where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum,'" CollegeSource, 653 F.3d at 1077 (emphasis added); Brayton, 606 F.3d at 1130 ("Here, Recordon knew of Brayton Purcells existence, targeted Brayton Purcell's business, and entered direct competition with Brayton Purcell." (emphasis added)), or by using his property to "exploit a particular market for its commercial gain," Mavrix, 647 F.3d at 1229 ("In this case, we find most salient the fact that Brand used Mavrix's copyrighted photos as part of its exploitation of the California market for its own commercial gain.").

With this understanding in mind, the Court turns to the facts of this case.  At the outset, the Court notes that it agrees with Plaintiff's characterization of Defendants' web site as "interactive."  Dkt. # 11 at ¶ 3.4.  In addition to simply providing information, the site provides a limited mechanism for exchanging information.  Compare id. (alleging that Defendants' site allows users to exchange information with Defendants via the "Quick Contact" feature), with Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th

Cir. 1997) (distinguishing "passive sites" from "interactive sites" where "users can exchange information with the host computer").  Of course, the fact that the site crosses the technical "interactive" threshold is not dispositive.  Cybersell, 130 F.3d at 419. Rather, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."  Id. at 419 (emphasis added).  And in this case, Defendants' site is so low on the interactivity scale as to be "essentially passive."  Id.  It provides information about Defendants and their services and a contact feature, nothing more. Dkt. # 11 at ¶¶ 3.4–3.6.  In addition, Plaintiff has plausibly alleged nothing more than that Defendants used their site to advertise widely.  Dkt. # 11 at ¶ 3.5.  This is not enough.  As Cybersell makes clear, "no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state."  130 F.3d at 418; id. at 419 ("While there is no question that anyone, anywhere could access that home page and thereby learn about the services offered, we cannot see how from that fact alone it can be inferred that Cybersell FL deliberately directed its merchandising efforts toward Arizona residents.").

Accordingly, the Court must consider whether Plaintiff's allegations regarding Defendants' use of his copyrighted materials provide the "something more" otherwise missing.  Mavrix, 647 F.3d at 1229 ("[W]e have held that 'operating even a passive website in conjunction with "something more"—conduct directly targeting the forum—is sufficient.'" (quoting Rio Props., 284 F.3d at 1020)).  The Court finds that they do not.  First, unlike in Mavrix, Plaintiff has not tenably alleged that Defendants "anticipated, desired, and achieved a substantial [Washington] viewer base" such that the Washington "audience is an integral component of [Defendant]'s business model

and its profitability."[2]  Cf. 647 F.3d at 1230 ("[I]t does not violate due process to hold Brand answerable in a California court for the contents of a website whose economic value turns, in significant measure, on its appeal to Californians.").  Rather, Plaintiff has plausibly alleged only that Defendants advertise widely, Dkt. # 11 at ¶¶ 3.4–3.6; Dkt. # 20 at ¶¶ 12–17, which, as noted, is not enough.  Cybersell, 130 F.3d at 418–19.

Second, unlike in CollegeSource or Brayton, Plaintiff has not plausibly alleged that Defendants are specifically attempting to compete with him in the Washington market.  CollegeSource, 653 F.3d at 1077; Brayton, 606 F.3d at 1130.  Nor could he. There is no evidence before the Court that Defendants sought any business outside the New York area.  Not one of Defendants' attorneys is licensed to practice law in Washington.  And Defendants' site expressly states:  "Our firm has been practicing in Western New York since 1984 and serves the Eighth Judicial District including Erie, Niagara, Genesee, Cattaraugus, Wyoming, Monroe, Chautauqua, Orleans, Allegany." In short, the Court thinks it clear that Defendants' web site is aimed locally even though, like nearly every other web site, it is nationally and internationally accessible.  See Pebble Beach, 453 F.3d at 1158; Bancroft, 223 F.3d at 1087 (noting that the question is whether the alleged tortious act was "performed for the very purpose of having their

---

[2]  The Court is aware that Plaintiff alleges in his amended complaint that, "[o]n information and belief, a substantial number of Washington residents did access Defendants' advertising and social network sites, became clients of Defendants and were induced to access www.venzonlawfirm.com web site where Defendants repeatedly contributorily infringed Plaintiff's copyright by inducing clients and advertising and social network users to download the unauthorized, illegal Derivative Work of Plaintiff's Original Work from said web site." Dkt. # 11 at ¶ 3.6.  This allegation is insufficient to support Plaintiff's position, however, as Defendants have affirmatively stated via affidavit that they "have not had any Washington clients during the relevant time period" and have "not actively solicited Washington state clients" via their web site, Dkt. # 14.  Mavrix, 647 F.3d at 1223 (Courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." (citation and internal quotation marks omitted).  And because Plaintiff does not offer anything in his affidavit to support his allegations, see Dkt. # 20, the Court must credit Defendants' uncontradicted representations.  See Mavrix, 647 F.3d at 1223.

consequences felt in the forum state" (citation and internal quotation marks omitted));
Cybersell, 130 F.3d at 418–19.

In sum, just as in Pebble Beach and Schwarzenegger, Defendants' voluntary act certainly supports the argument that they should have foreseen that they would cause harm in Washington.  Pebble Beach, 453 F.3d at 1158.  However, it does not support Plaintiff's contention that Defendants aimed their conduct at the Washington forum. Schwarzenegger, 374 F.3d at 807 ("It may be true that Fred Martin's intentional act eventually caused harm to Schwarzenegger in California, and Fred Martin may have known that Schwarzenegger lived in California.  But this does not confer jurisdiction, for Fred Martin's express aim was local.").  The Court thus finds that Plaintiff has failed to make a "prima facie showing of jurisdiction."  Rio Props., 284 F.3d at 1019.

**B. Attorney's Fees**

Having concluded that the Defendants are not subject to personal jurisdiction in this state, the Court must consider whether they are entitled to their reasonable attorney's fees pursuant to RCW 4.28.185(5).  The Court finds that they are, but exercises its discretion to deny their request.  See Strandley v. CNA Ins. Cos., 93 Wn. App. 1022, at *5 (1998) (citing State v. O'Connell, 83 Wn.2d 797, 844 (1974)).

RCW 4.28.185(5) provides:  "In the event the defendant is personally served outside the state on causes of action enumerated in this section, and prevails in the action, there may be taxed and allowed to the defendant as part of the costs of defending the action a reasonable amount to be fixed by the court as attorneys' fees."  RCW 4.28.185(5) (emphasis added).  As the text reflects, however, an award is not mandatory. The statute allows courts the discretion to deny an otherwise proper request—discretion that is particularly broad when the circumstances of a case fall outside the heartland of RCW 4.28.185(5) purpose:  "to permit courts in their discretion to award . . . fees as compensation for an out-of-state defendant having to defend against frivolous actions or

1   one that creates a burden on that party that outweighs convenience to the defendant and

2   that offend the traditional notions of fair play and substantial justice." Johnston v. Hines

3   GS Props., Inc., 114 Wn. App. 1013, at *5 (2002) (emphasis added).

4      Here, Plaintiff's basis for asserting jurisdiction was far from frivolous. As noted

5   previously, the issue is both complicated and close under the Ninth's Circuit's evolving

6   interpretation of Calder's effect. See, e.g., Fiore v. Walden, --- F.3d ----, 2012 WL

7   3194464 (9th Cir. 2012) (demonstrating the intra-circuit lack of agreement as to

8   Calder's reach). As a result, the Court declines to award Defendants any fees.

### III. CONCLUSION

9      For all of the foregoing reasons, the motion to dismiss (Dkt. # 16) is GRANTED

10  IN PART. The Court DISMISSES this action for lack of personal jurisdiction but

11  DENIES Defendants' request for fees.

12

13     DATED this 30th day of August, 2012.

14

15

16         Robert S. Lasnik
           United States District Judge

17

18

19

20

21

22

23

24

25

26  ORDER GRANTING IN PART DEFENDANTS' MOTION
    TO DISMISS FOR LACK OF PERSONAL JURISDICTION - 10